```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
ALEXIO GOBERN,                                              :
                                                            :
                                      Petitioner,           :
                                                            :           18-cv-12411 (VSB)
                   -v-                                      :
                                                            :           **OPINION & ORDER**
UNITED STATES OF AMERICA,                                   :
                                                            :
                                      Respondent.           :
                                                            :
------------------------------------------------------------X
```

Appearances:

Alexio Gobern
F.P.C. Schuylkill
Minersville, PA
*Pro Se Petitioner*

Alex Rossmiller
United States Attorney's Office, Southern District of New York
New York, NY
*Counsel for Respondent*

VERNON S. BRODERICK, United States District Judge:

       Petitioner Alexio Gobern ("Gobern") filed a motion for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 ("Petition") seeking to vacate his sentence and conviction after trial in *United States v. Adames*, No. 15-CR-796 (VSB). (Doc. 1.)[1] Because Gobern's attorney acted properly when he withdrew the motion to suppress—as the motion was successful and the evidence at issue was not used at trial—and because Gobern was found guilty by a jury, the Petition is DENIED.

---

[1] In this Opinion & Order I cite to documents from both the civil docket for this habeas petition and the criminal docket for the underlying offense. I cite to documents filed in the civil action by their docket number alone. When I cite to a document from the related criminal docket, I indicate such by citing the docket number and case number in the citation.

I.      **Background and Procedural History**

On March 22, 2016, a Superseding Indictment (S2 15-CR-796, Doc. 22) was filed charging Gobern with conspiracy to distribute and possess with the intent to distribute cocaine, pursuant to 21 U.S.C. §§ 846, 841(b)(1)(A). Following a jury trial held in the Southern District of New York before me from November 9 through November 15, 2016, Gobern was found guilty by a jury of participating in a conspiracy to distribute and possess with the intent to distribute cocaine. (Doc. 147, Trial Tr. 682-83.)[2] On April 12, 2017, I sentenced Gobern to a prison term of 144 months—a substantial variance below Defendant's guidelines range of 210 to 262 months—and 5 years of supervised release. (S2 15-CR-796, Docs. 187, 192.)

In advance of the trial, Gobern filed a motion to suppress evidence seized from his cellular phone in violation of the Fifth Amendment. (S2 15-CR-796 Docs. 68, 69.) On September 22, 2016, the Government filed a letter in response to that motion stating that it had no intention of using the information obtained from Gobern's cellular phone in its case in chief at trial, and argued that the motion was, therefore, moot. (S2 15-CR-796, Doc. 71.) In response, counsel for Gobern filed a letter on September 23, 2016, stating that, based on the Government's September 22 letter, Gobern's motion to suppress was indeed moot, and therefore an evidentiary hearing was not necessary. (S2 15-CR-796, Doc. 72.) On September 26, 2016, I issued an order adjourning *sine die* the evidentiary hearing previously scheduled for October 6, 2016. (S2 15-CR-796, Doc. 73.) Consistent with the representation in its September 22, 2016 letter, the Government did not use the information obtained from Gobern's cellular phone at trial.

On April 12, 2017, Gobern appealed his sentence to the Second Circuit. (S2 15-CR-796, Doc. 194.) In a Summary Order, issued on March 21, 2018, the Second Circuit upheld the

---

[2] "Trial Tr." refers to the transcript of Gobern's trial.

2

conviction and sentence, *United States v. Adames*, 727 Fed. App'x 12 (2d Cir. 2018) (summary order), and Mandate was issued on May 9, 2018, (S2 15-CR-796, Doc. 216).

On December 28, 2018, Gobern moved to vacate his sentence pursuant to 18 U.S.C. § 2255 by filing the Petition in his criminal case. (S2 15-CR-796, Doc. 219).  The Clerk's Office then opened the instant corresponding civil action, 18-cv-12411. (Doc. 1).  On January 8, 2019, I entered an Order to Answer that directed the Government to file an answer or other pleadings in response to the motion.  (Doc. 3.)  On February 18, 2019, the United States Attorney's Office for the Southern District of New York filed a brief in opposition on the Government's behalf. (Doc. 6.)  Gobern filed a reply on April 4, 2019.  (Doc. 9.)[3]

## II.     Legal Standard of Review

Title 28 U.S.C. § 2255 authorizes any prisoner in custody under sentence of a federal court "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . [to] move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).  "Section 2255 provides relief in cases where the sentence:  (1) was imposed in violation of the U.S. Constitution or the laws of the United States; [] (2) was entered by a court without jurisdiction to impose the sentence; [] (3) exceeded the maximum detention authorized by law; or (4) is otherwise subject to collateral attack." *Adams v. United States*, 372 F.3d 132, 134 (2d Cir. 2004) (citing 28 U.S.C. § 2255)).  The petitioner in a § 2255 proceeding bears the burden of proof by a

---

[3] On January 10, 2020, Gobern filed a letter inquiring as to the status of his petition. (Doc. 10.)  On February 13, 2020, Gobern filed a letter motion seeking the appointment of pro bono counsel for his Petition. (Doc. 11.)  On March 2, 2020, Gobern filed another request for the appointment of pro bono counsel. (Docs. 12, 13.)  On April 13, 2020, Gobern filed a letter requesting a status update on his Petition. (Doc. 14.)  On April 21, 2020, I denied Gobern's requests for pro bono counsel.  (Doc. 15.)  On September 4, 2020, Gobern filed a letter addressed to Assistant United States Attorney Alex Rossmiller requesting that the Government consider a joint request to me asking that I reduce Gobern's sentence to 60 months imprisonment and 70 months of supervised release; Gobern stated that he believed such a reduction would be beneficial to all parties.  (Doc. 16.)

preponderance of the evidence. *See Triana v. United States*, 205 F.3d 36, 40 (2d Cir. 2000). However, a petitioner proceeding pro se is entitled to have his petition "read liberally and [] interpreted to raise the strongest arguments that [it] suggests." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

Unless the motion, case files, and record "conclusively show that the prisoner is entitled to no relief," a court must "grant a prompt hearing" and make findings of fact and reach conclusions of law regarding the issues raised in the motion. *Id*. § 2255(b). "To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the movant] to relief." *Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013). Where the asserted basis for relief is ineffective assistance of counsel, a hearing is required only "where the petitioner has made a 'plausible claim'" for a hearing. *Morales v. United States*, 635 F.3d 39, 45 (2d Cir. 2011) (internal quotation marks omitted). The movant's assertions in support of the motion need not be assumed credible if they are contradicted by the record. *See Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009); *see also Fermin v. United States*, 859 F. Supp. 2d 590, 602 (S.D.N.Y. 2012) (finding that a testimonial hearing is not necessary when it would not succeed in proving additional material facts).

Ineffective assistance of counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. The question of ineffective assistance is determined by a two-part test. A defendant must demonstrate "(1) that counsel's performance was so unreasonable under prevailing professional norms that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment; and (2) that counsel's ineffectiveness prejudiced the defendant such that there is a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different." *United States v. Habbas*, 527 F.3d 266, 273 (2d Cir. 2008) (quoting *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004)). "*Strickland*'s two-prong test applies equally to claims of ineffective assistance of appellate counsel on a defendant's first appeal as of right." *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001). However, to demonstrate deficient performance of appellate counsel, "it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument. Counsel is not obliged to advance every nonfrivolous argument that could be made." *Id*. Instead, the petitioner must demonstrate "that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

With respect to the first prong—deficient performance—the inquiry is "highly deferential" and requires that "every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. The petitioner seeking relief must overcome the "strong presumption" that counsel's performance fell "within the wide range of reasonable professional assistance," *i.e.*, that counsel's conduct reflected reasonable strategic choices. *Id*.

With regard to the second prong—prejudice—a reasonable probability of a different outcome means a "probability sufficient to undermine confidence in the outcome." *Id*. at 694. Specifically, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citing *Strickland*, 466 U.S. at

693); *see also Strickland*, 466 U.S. at 693 ("[N]ot every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding."). Moreover, "an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993). Second Circuit precedent generally "requires some objective evidence other than defendant's assertions to establish prejudice." *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003).

Although a petitioner must satisfy both prongs to obtain relief, the Supreme Court has stated that "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697; *see also Brown v. Artuz*, 124 F.3d 73, 80 (2d Cir. 1997) (declining to address the first prong of Strickland on the ground that the defendant could not satisfy the prejudice prong).

### III. Discussion

#### A. *Ineffective Assistance of Counsel -- Withdrawal of the Motion to Suppress*

Petitioner has failed to establish that the withdrawal of the motion to suppress was either unreasonable under prevailing professional norms or caused him prejudice such that, but for the withdrawal of the motion, the outcome at trial would have been different. See *Strickland*, 466 U.S. at 689. Defense counsel's withdrawal of the motion to suppress was not unreasonable under prevailing professional norms as the motion achieved its goal—the exclusion of evidence seized from Defendant's cellular phone. *See United States v. Nejad*, 436 F. Supp. 3d 707, 736 (S.D.N.Y. 2020) (finding Defendant's motion to suppress moot with respect to the documents

the Government represented it would not rely on at trial).  On September 22, 2016, the Government filed a letter in response to Gobern's motion to suppress stating that it would not use the information obtained from Gobern's cellular phone in its case in chief at trial.  (S2 15-CR-796, Doc. 71.)  This was the exact result Gobern sought to achieve by filing his motion in the first place.  (*See generally* S2 15-CR-796, Doc. 69.)  By the Government filing a letter stating it "does not intend to rely in its case in chief on the contents of the iPhone searched through the use of the password" provided by Gobern, Gobern's motion was, for all intents and purposes, granted on consent.[4]  (S2 15-CR-796, Doc. 71.)  Gobern's counsel's subsequent request to withdraw the motion was logical since no further relief could have been obtained by pressing forward on the motion, and withdrawal preserved the resources of the parties and the court.  Similarly, counsel's actions did not prejudice Gobern, since the motion achieved its goal and the evidence obtained from the cellular phone was not used at trial.  *See In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 177, 196 (2d Cir. 2008) (finding that "defense counsel's delay in re-filing the suppression motion was not prejudicial because the government represented that no statement from the interrogation conducted in Pakistan would be used at trial—and none of his statements was so used by the government").

Gobern also does not demonstrate that any evidence introduced at trial was somehow related to the evidence contained on his phone.  Gobern argues that "[t]hough there appears to be no evidence that the Government 'directly' introduced any evidence from the contents of the iPhone at trial, given the extent of the evidence and intelligence obtained from the iPhone, it is hard to imagine that none of the evidence introduced at trail did not in some way originate from

---

[4] I note that the Government did not concede prior to trial or here that the password and information were retrieved in violation of Gobern's Constitutional rights, and I make no such finding.  (S2 15-CR-796, Doc. 70.)

7

the illegal search of the iPhone." (Reply 10.)[5] Gobern concedes that no evidence from his iPhone was admitted at trial, but then speculates—without identifying any facts in support—that some of the evidence must have "in some way originate[d] from the illegal search of the iPhone." (*Id.*)  Gobern's idle speculation is not sufficient to taint the evidence introduced at trial.

Petitioner's reliance on *Kastigar v. United States*, 406 U.S. 441 (1972) is misplaced.  The facts in *Kastigar* are not analogous to the facts here.  *Kastigar* involved petitioners who were subpoenaed to appear in front of a grand jury to testify.  406 U.S. at 442.  The Government believed that the petitioners would each assert their Fifth Amendment privilege, and applied for orders directing the petitioners to answer questions under a grant of immunity.  *Id.*  Petitioners contended that the scope of the immunity was not extensive enough to supplant the Fifth Amendment privilege and compel their testimony.  *Id.*  The District Court ordered petitioners to appear and testify, and when they refused to testify found them in contempt.  *Id.*  The Ninth Circuit affirmed the district court's ruling, which was appealed to the United States Supreme Court.  *Id.* at 442-443; *Stewart v. United States*, 440 F.2d 954 (9th Cir. 1971).  The Supreme Court affirmed the Ninth Circuit, and held that the immunity provided to the witnesses by 18 U.S.C. § 6002 was coextensive with the privilege provided by the Fifth Amendment, as the immunity put the witnesses and the prosecutorial authorities in substantially the same position as if the witnesses had claimed the Fifth Amendment privilege.  *Kastigar*, 406 U.S. at 462.

The facts here are wholly dissimilar to the facts in *Kastigar*.  Here, Gobern contends that evidence was taken from his phone by improperly obtaining his cellular phone password, in violation of his Fifth Amendment rights.  Evidence from the iPhone was not used at trial, and no order was issued compelling Gobern's testimony under the grant of immunity.

---

[5] "Reply" refers to petitioner's reply memorandum of law in support of his motion. (Doc. 9.)

Similarly, the holding in *Kastigar* does not apply to the situation presented here. *Kastigar* addressed "the question [of] whether the United States Government may compel testimony from an unwilling witness, who invokes the Fifth Amendment privilege against compulsory self-incrimination, by conferring on the witness immunity from use of the compelled testimony in subsequent criminal proceedings, as well as immunity from use of evidence derived from the testimony." *Id.* at 442. This is not at issue here. Although both cases involve the Fifth Amendment, the similarities end there. Gobern relies on *Kastigar* for the proposition that the prosecution has an "affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." *Id.* at 460. However, this duty is created only if a Defendant "demonstrates that he has testified, under a state grant of immunity, to matters related to the federal prosecution." *Id.* (citing *Murphy v. Waterfront Comm'n*, 378 U.S. 52, 79 n.18 (1964)). This duty is meant as a further protection for a defendant testifying under the grant of immunity, "commensurate with that resulting from invoking the [Fifth Amendment] itself." *Kastigar*, 406 U.S. at 461.

*Kastigar* narrowly discusses whether granting immunity "leaves the witness and the prosecutorial authorities in substantially the same position as if the witness had claimed the Fifth Amendment privilege." *Id.* at 462. It does not address physical evidence or information that is derived from physical evidence. Here, immunity is not an issue. In addition, there were no statements offered at trial, and no evidence offered at trial derived from Gobern's cellular phone.

### B. *Use of the Evidence Before the Grand Jury*

Petitioner's argument that the grand jury process was tainted by the evidence obtained from his's cellular phone, and therefore the indictment was improper, is also without merit, as the claim should have been made before trial. The categories of motions that must be made

9

before trial are those that assert "a defect in instituting the prosecution," Fed. R. Crim. P. 12(b)(3)(A) (2014), or assert "a defect in the indictment," *id.* 12(b)(3)(B). As amended in 2014, Rule 12(b)(3) provides "a nonexclusive list of commonly raised claims under each category." *Id.*, Advisory Comm. Note (2014). The examples include "an error in the grand-jury proceeding." *Id.* 12(b)(3)(A)(v). Gobern failed to submit his challenge to the grand jury proceeding before trial, and therefore waived the alleged defect in the grand jury indictment. *Freeman v. United States*, Nos. 09 Civ. 4087(LAP), 02 Cr. 150(LAP), 2010 WL 4026067, *6 (S.D.N.Y. Oct. 14, 2010) ("[i]n the Second Circuit, objections to indictments must generally be raised before trial") (citing *United States v. Murray*, 618 F.2d 892, 899 n.8 (2d Cir. 1980) ("objections based on defects in the indictment must be raised prior to trial")). Even assuming arguendo that Gobern is right, and the indictment was based on illegally obtained evidence, "[i]t is well settled that a guilty verdict at trial 'remedies any possible defects in the grand jury indictment.'" *United States v. Ashraf*, 320 F. App'x 26, 28 (2d Cir. 2009) (quoting *United States v. Lombardozzi*, 491 F.3d 61, 80 (2d Cir. 2007)).

### C. *Trial Evidence Related to Amount of Cocaine*

Petitioner's challenge to the amount of cocaine and source of the evidence presented to the grand jury in obtaining the indictment must be rejected. Regardless of the defects Petitioner alleges occurred in front of the grand jury, at trial the jury was properly presented with sufficient evidence to support a guilty verdict, which cures any potential defect in the grand jury indictment. *See Ashraf*, 320 F. App'x at 28.

In any event, Gobern now rehashes the same defects he argued in his appeal with regard to the amount of cocaine presented at trial but now applies them to the grand jury. There is no basis to believe the grand jurors—who reviewed the evidence for the existence of probable

cause—were presented with different evidence from the jury at trial. The evidence presented at trial was more than sufficient to support the jury's finding that Gobern's participation in the conspiracy involved over 5 kilograms of cocaine. (S2 15-CR-796, Doc. 111.) Members of the conspiracy, Carlos Pizarro and Kelly Pichardo, cooperated with the Government and, although they did not personally know Gobern, tied Gobern to the conspiracy. (*See* Trial Tr. 225, 234, 413-416, 463, 512). Gobern's fingerprints were found on adhesive tape used to wrap some of the seized packages of cocaine, Gobern was seen in surveillance video footage mailing some of the packages, and he electronically tracked the packages in the mail. (*See, e.g.*, *id*. 44-50, 119-23). Once the jury determined that Gobern was guilty of participating in the narcotics conspiracy involving cocaine it was free to rely on the evidence presented at trial to determine that Gobern should be held responsible for the entire amount involved in the conspiracy. (*See* Trial Tr. 648-49; S2 15-CR-796, Doc. 111.)

The trial evidence supports that Gobern personally sent or was involved in sending at least 3.94 kilograms of cocaine, and his co-conspirators sent an additional 3.5 kilograms of cocaine, from Puerto Rico to the United States in 12 packages. Package 1, sent on March 3, 2015, contained approximately 1 kilogram of cocaine. (Trial Tr. 50–55.) Package 4, mailed on August 30, 2015, contained 530 grams of cocaine. (Trial Tr. 128–29.) Package 5, contained at least two kilograms of cocaine, and another package, either package 6 or 7, weighed the same amount as package 5, and may have contained additional cocaine. (Trial Tr. 138–42, 162, 219–20.) Package 9, shipped on January 13, 2016, contained 406 grams of cocaine. (Trial Tr. 178–86.) Packages 10, 11, and 12, were shipped on April 16, 2015, and contained two kilograms, 504 grams, and one kilogram of cocaine, respectively. (Trial Tr. at 228–32, 198, 369–73, 243–44, 476–79.) This evidence was all introduced at trial, without using any evidence obtained from

11

Gobern's cellular phone.

> At trial, I gave the jury the following instructions:
>
> You need not determine the precise quantity. Instead if you reach the question of quantity, indicate on the verdict form whether the government has established beyond a reasonable doubt that the conspiracy involved five kilograms or more of mixtures and substances containing a detectable amount of cocaine. . . . In making your determination about the type and quantity of any controlled substance involved in the conspiracy charged in Count One, you should decide whatever type and quantity of controlled substance were involved in any act or acts in which the defendant personally and directly participated. That is, if you find the defendant personally and directly participated in a jointly undertaken drug transaction, he is personally responsible for the full quantity of drugs involved in that transaction, whether or not he knew the specific type or quantity involved in the transaction and whether or not the type and quantity were reasonably foreseeable to him. "Reasonably foreseeable" means that the defendant could have reasonably anticipated the type and quantity of drugs involved in the conspiracy. In making your determination about the type and quantity of controlled substances involved in the offense, you should also include any controlled substances associated with any coconspirators of the defendant, as long as the type and quantity were either known to the defendant or reasonably foreseeable to him and within the scope of the criminal activity that he jointly undertook.

(Trial Tr. 661-663.) Relying upon the evidence and following my instructions, the jury found Gobern guilty of participating in a conspiracy to distribute and possess with the intent to distribute cocaine in an amount greater than 5 kilograms of cocaine. (S2 15-CR-796, Doc. 111.) Since this evidence was sufficient to establish Gobern's guilt beyond a reasonable doubt, there can be no question it met the probable cause standard applicable before the grand jury.

On April 12, 2017, Gobern appealed his sentence to the Second Circuit. (S2 15-CR-796, Doc. 194.) Gobern raised the issue of the sufficiency of the evidence related to the amount of cocaine on his direct appeal and the Second Circuit rejected his argument. Specifically, Gobern argued that the Government could only tie him personally to 3.9 kilograms of cocaine, and because he was not tied to the other 3.5 kilograms sent by his co-conspirators he could not be held liable for those amounts. *United States v. Adames*, 727 Fed. App'x 12, 14–15 (2d Cir.

2018) (summary order). In its March 21, 2018, Summary Order, the Second Circuit upheld my ruling that the additional kilograms of cocaine sent by his co-conspirators could be considered by the jury. *Id.* The Second Circuit further explained that the fact that Gobern did not personally assist with every package did not impair the sufficiency of the evidence against him, and affirmed the judgment. *Id.* Notably, on appeal Gobern did not raise any argument related to his cellular phone, the suppression motion, or the grand jury proceedings. Gobern does not challenge the sufficiency of his appellate counsel in the instant motion.

### IV. Conclusion

For the reasons stated above, Gobern's motion for a writ of habeas corpus is DENIED. Because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c)(2) (2019). The Clerk's Office is directed to mail a copy of this Opinion & Order to the pro se Petitioner, and close the case.

SO ORDERED.

Dated: November 4, 2020
        New York, New York

*Vernon S. Broderick*
United States District Judge