```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
ALEXIO GOBERN,                                              :
                                                            :
                                      Petitioner,           :
                                                            :           18-cv-12411 (VSB)
                  - against -                               :
                                                            :           **OPINION & ORDER**
UNITED STATES OF AMERICA,                                   :
                                                            :
                                                            :
                                      Respondent.           :
------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/25/2021

Appearances:

Alexio Gobern
F.P.C. Schuylkill
Minersville, PA
*Pro Se Petitioner*

Alex Rossmiller
United States Attorney's Office, Southern District of New York
New York, NY
*Counsel for Respondent*

VERNON S. BRODERICK, United States District Judge:

     Before me is pro se Petitioner Alexio Gobern's ("Petitioner" or "Gobern") motion pursuant to Federal Rule of Civil Procedure 59(e) ("Motion") for relief from my November 4, 2020 Opinion & Order (the "11/4/20 O&O", Doc. 17), denying Gobern's motion for a writ of habeas corpus. (Doc. 19.) Because I find that there is no basis for me to reconsider the 11/4/20 O&O, Gobern's Motion is DENIED.

I.    **Background and Procedural History**[1]

Gobern's Motion stems from his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 ("Petition") seeking to vacate his sentence and conviction after trial in *United States v. Adames*, No. 15-CR-796 (VSB).  (Doc. 1.)[2]  In advance of the trial, Gobern filed a motion to suppress evidence seized from his cellular phone in violation of the Fifth Amendment. (S2 15-CR-796, Docs. 68, 69.)  On September 22, 2016, the Government filed a letter in response to that motion stating that it had no intention of using the information obtained from Gobern's cellular phone in its case in chief at trial, and argued that the motion was, therefore, moot.  (S2 15-CR-796, Doc. 71.)  In response, counsel for Gobern filed a letter on September 23, 2016, stating that, based on the Government's September 22 letter, Gobern's motion to suppress was indeed moot, and therefore an evidentiary hearing was not necessary.  (S2 15-CR-796, Doc. 72.)  On September 26, 2016, I issued an order adjourning *sine die* the evidentiary hearing previously scheduled for October 6, 2016.  (S2 15-CR-796, Doc. 73.)

On April 12, 2017, Gobern appealed his sentence to the Second Circuit.  (S2 15-CR-796, Doc. 194.)  In a Summary Order, issued on March 21, 2018, the Second Circuit upheld the conviction and sentence, *United States v. Adames*, 727 Fed. App'x 12 (2d Cir. 2018) (summary order), and Mandate was issued on May 9, 2018, (S2 15-CR-796, Doc. 216).

On December 28, 2018, Gobern moved to vacate his sentence pursuant to 18 U.S.C. § 2255 by filing the Petition in his criminal case.  (S2 15-CR-796, Doc. 219.)  The Clerk's Office then opened the instant corresponding civil action, 18-cv-12411.  (Doc. 1.)  On January 8, 2019,

---

[1] For purposes of this Opinion & Order, I assume familiarity with the factual and procedural background of the action, and incorporate by reference the background summarized in the 11/4/29 O&O.

[2] In this Opinion & Order I cite to documents from both the civil docket and the criminal docket for the underlying offense.  I cite to documents filed in the civil action by their docket number alone.  When I cite to a document from the related criminal docket, I indicate such by citing the docket number and case number in the citation.

2

I entered an Order to Answer that directed the Government to file an answer or other pleadings in response to the motion. (Doc. 3.) On February 18, 2019, the Government filed a brief in opposition to Gobern's § 2255 motion. (Doc. 6.) Gobern filed a reply on April 4, 2019. (Doc. 9.)

On November 4, 2020, I issued my Opinion & Order, and denied Gobern's Petition on the grounds that Gobern's attorney had acted properly when he withdrew the motion to suppress—as the motion was successful and the evidence at issue was not used at trial—and because Gobern was found guilty by a jury. (11/4/20 O&O.) On December 1, 2020, Gobern again appealed to the Second Circuit, (Doc. 18); his appeal remains pending.

On December 8, 2020, Gobern filed the instant motion for reconsideration. (Doc. 19.) On March 19, 2021, Gobern filed a letter stating that in a different criminal case, *United States v. Nejad*, 18-cr-224, the Government had admitted to "'substantial failures' in disclosing potentially exculpatory evidence," and requested that I take judicial notice of the Assistant United States Attorney's letter admitting prosecutorial misconduct. (Doc. 20.) On April 15, 2021, Gobern filed a letter requesting a status update on his motion for reconsideration, (Doc. 21), and on April 21, 2021, I informed him that his motion remained under consideration, (Doc. 22). The Government did not respond to Gobern's Motion.

## II. Legal Standard

Generally, a party seeking reconsideration must show either "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *In re Beacon Assocs. Litig.*, 818 F. Supp. 2d 697, 701 (S.D.N.Y. 2011) (quoting *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 154 F. Supp. 2d 696, 701 (S.D.N.Y. 2001)). "It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the

case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple'. . . ." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)), *as amended* (July 13, 2012); *see also Polsby v. St. Martin's Press, Inc.*, No. 97 Civ. 690(MBM), 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000) ("[A] party may not advance new facts, issues or arguments not previously presented to the Court." (internal quotation marks omitted)). "Rather, 'the standard for granting [a Rule 59 motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked.'" *Analytical Surveys, Inc.*, 684 F.3d at 52 (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

"Under Rule 59(e), a district court may 'alter or amend judgment to correct a clear error of law or prevent manifest injustice.'" *Corsair Special Situations Fund, L.P. v. Nat'l Res.*, 595 F. App'x 40, 44 (2d Cir. 2014) (summary order) (quoting *ING Global v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 96 (2d Cir. 2014)). "The 'manifest injustice' standard is, by definition, 'deferential to district courts and provide[s] relief only in the proverbial "rare case."'" *Id.* (quoting *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009)). However, as the Second Circuit has observed, there is no "manifest injustice" where the movant's arguments for relief "were available to the [party] [] and [the party] proffer[s] no reason for [its] failure to raise the arguments." *Id.* (quoting *In re Johns–Manville Corp.*, 759 F.3d 206, 219 (2d Cir. 2014)).

### III.   Discussion

Gobern makes two arguments for reconsideration. First, he argues that my reliance on *United States v. Nejad*, 436 F. Supp. 3d 707 (S.D.N.Y. 2020) for the proposition that "Defense counsel's withdrawal of the motion to suppress was not unreasonable under prevailing

professional norms as the motion achieved its goal—the exclusion of evidence seized from Defendant's cellular phone" was misplaced because *Nejad* "is no longer good case law based on the court throwing out the case after the government was caught withholding evidence" and agreeing to dismiss the case. (Doc. 19, at 2 (citing 11/4/20 O&O 6–7).) Gobern subsequently wrote a letter on March 19, 2021 to provide me with additional information concerning *Nejad*. Gobern attached to that letter correspondence between the Government and Judge Alison Nathan related to *Nejad*, and a December 18, 2020 letter from the Government to Judge P. Kevin Castel in which the Government states that it has "implemented policy changes," including "conduct[ing] disclosure training for agents and prosecutors and instituted additional AUSA training on an ongoing basis, emphasizing the need for 'prudent and timely' attention to these responsibilities." (*See* Doc. 20.)

Gobern is correct that in *Nejad*, following Judge Nathan's opinion that I cited to, the defendant's conviction was subsequently vacated, *see* 18-cr-224, Doc. 362, and Judge Nathan issued an opinion condemning the Government for its repeated failure to live up to its disclosure obligations, *see United States v. Nejad*, 487 F. Supp. 3d 206, 207 (S.D.N.Y. 2020) ("Over the course of years in this prosecution—before, during, and after trial—the Government has made countless belated disclosures of arguably (and, in one instance, admittedly) exculpatory evidence."). Although the Government's conduct in *Nejad* was undoubtedly serious, this does not constitute an intervening change of controlling law. As an initial matter, the defendant's conviction in *Nejad* was not vacated because the proposition for which I cited the case was no longer good law. The proposition that the exclusion of evidence is the purpose of a suppression motion is still correct, *see Simmons v. United States*, 390 U.S. 377, 389 (1968) ("In order to effectuate the Fourth Amendment's guarantee of freedom from unreasonable searches and

5

seizures, this Court long ago conferred upon defendants in federal prosecutions the right, upon motion and proof, to have excluded from trial evidence which had been secured by means of an unlawful search and seizure"), as is the notion that the Government's decision not to offer challenged evidence warrants the denial of a suppression motion as moot, *see, e.g.*, *United States v. Mathieu*, No. 16 Cr. 763 (LGS), 2018 WL 5869642, at *1 (S.D.N.Y. Nov. 9, 2018); *United States v. Rivera*, 16 Cr. 175 (LGS), 2017 WL 1843302, at *1 (S.D.N.Y. May 8, 2017) (denying motions to suppress evidence recovered from cellphones as moot where Government "represent[ed] that it d[id] not intend to offer such evidence at trial") (collecting cases); *United States v. DiMarco*, No. 12 CR 205 RPP, 2013 WL 444764, at *13 (S.D.N.Y. Feb. 5, 2013) (same); *United States v. Duran-Colon*, 252 F. App'x 420, 422 (2d Cir. 2007) (observing that after defendant moved to suppress certain statements, "[t]he motion became moot as it related to the drug press statements when the government determined not to offer them"); *United States v. Noble*, No. 93 Cr. 262 (LMM), 1993 WL 307882, at *1 (S.D.N.Y. Aug. 12, 1993) (denying motion to suppress as moot where government stated it would not offer the statements in evidence); *see also In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 177, 196 (2d Cir. 2008) (finding that "defense counsel's delay in re-filing the suppression motion was not prejudicial because the government represented that no statement from the interrogation conducted in Pakistan would be used at trial—and none of his statements was so used by the government").

Second, Gobern asserts that the Government did in fact use information from his cellphone at trial. He appears to argue that the testimony of Carlos Pizarro and Kelly Pichardo, who did not personally know Gobern, but linked him to the conspiracy, is proof that evidence from the phone was used. (*See* Doc. 19, at 4.) Gobern provides no reason for why he did not

6

previously advance this argument, and a reconsideration motion is the improper vehicle to do so. *See Polsby*, 2000 WL 98057, at *1 ("[A] party may not advance new facts, issues or arguments not previously presented to the Court." (internal quotation marks omitted)). Moreover, his attempt to link the testimony of Pizzaro and Pichardo to the contents of the phone is factually unsupported and speculative at best.

Gobern also asserts that counsel was deficient by failing to proceed with the suppression hearing because it would have shown that the indictment was based on the contents of the phone, and counsel could have subsequently moved to dismiss the indictment. (Doc. 19, at 3–5.) This argument is simply "a second bite at the apple", *Analytical Surveys, Inc.*, 684 F.3d at 52 (internal quotation marks omitted), and repackages an argument that I previously rejected in my 11/4/2020 O&O, (*see* 11/4/2020 O&O 7–10). As I previously explained, "[e]ven assuming arguendo that Gobern is right, and the indictment was based on illegally obtained evidence, 'it is well settled that a guilty verdict at trial remedies any possible defects in the grand jury indictment.'" (*Id.* at 10 (quoting *United States v. Ashraf*, 320 F. App'x 26, 28 (2d Cir. 2009)). In other words, the jury convicted Gobern based on legally obtained evidence, and did not rely on any evidence from his phone.

More generally, Gobern argues that he was subject to the same sort of prosecutorial misconduct at issue in *Nejad*. (*See* Doc. 19, at 3; Doc. 20, at 2.) He explains that "AUSA Rossmiller knowingly and willing breached his agreement by introducing the testimony of Carlos Pizarro, Kelly Pichardo and additional kilo's of cocaine during trial all of which was evidence linked directly to [his] iphone, specifically photographs of [him] and Arganis Adames who was Pichardo's boyfriend and Pizarro's boss the pictures where the bases of establishing a conspiracy with these individuals." (Doc. 20, at 2.) As an initial matter, Gobern's claim that the

7

Government saw photographs of him with Adames and that resulted in the Government linking Gobern to the conspiracy is speculation, not supported by any evidence, and is false. Gobern was arrested pursuant to a criminal complaint dated January 26, 2016—before Gobern's arrest and the seizure of his phone—on a charge that he conspired with others to distribute and possess with intent to distribute five kilograms and more of cocaine.[3]  (S2 15-CR-796, Doc. 1.)  In other words, the Government had evidence of Gobern's membership in the narcotics conspiracy and had linked him to kilograms of cocaine before it had possession of his cellular telephone.

With regard to Gobern's allegations of prosecutorial misconduct, besides his speculative and untrue statement that the Government linked him to the narcotics conspiracy by seeing photographs from his phone, there is no evidence of such conduct in this case, and it appears to be untrue given that Gobern was charged as part of a conspiracy before the Government had his phone.  I presided over this case since its inception, including through trial and Gobern's subsequent motions, and I did not observe conduct that comes close to that identified by Judge Nathan in *Nejad* or any prosecutorial misconduct for that matter.  Therefore, there is no manifest injustice that needs to be corrected.

Because Gobern has failed to show "an intervening change of controlling law, . . . or the need to correct a clear error or prevent manifest injustice," *In re Beacon Assocs. Litig.*, 818 F. Supp. 2d at 701 (internal quotation marks omitted), Gobern's Motion is denied.[4]

---

[3] Specifically, the criminal complaint (1) linked Gobern to co-conspirators who were identified in the complaint as CC-1, CC-2, CC-3, and CC-4, (2) linked him to eight parcels suspected to contain cocaine shipped from Puerto Rico to the United States, and (3) detailed the seizure of over three kilograms of cocaine.  (S2 15-CR-796, Doc. 1.)

[4] Because taking judicial notice of the fact that the Government admitted to prosecutorial misconduct in an unrelated case would not change my determination, I decline to do so here.  (*See* Doc. 20) (requesting that I take judicial notice).  Additionally, I decline to take judicial notice of the fact that the Assistant United States Attorney in this case committed prosecutorial misconduct because I have not found that he has done so.  (*Id.*)

## IV.  Conclusion

For the foregoing reasons, Gobern's request for relief from the 11/4/20 O&O is DENIED.

The Clerk of Court is respectfully directed to terminate the motion pending at Docket Entry 19, to close the case, and to mail a copy of this order to Pro Se Petitioner.

SO ORDERED.

Dated: August 25, 2021
       New York, New York

*Vernon Broderick*

Vernon S. Broderick
United States District Judge